IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARRICK EDWARD WRENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-00241-JD |
| | ) | |
| STATE OF OKLAHOMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are Defendant Deborah Fortune's ("Fortune") Motion to Dismiss Amended Complaint [Doc. No. 26] and Defendant Kimberly Shanique Shoals's ("Shoals") Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 30]. Both seek dismissal with prejudice of Plaintiff Darrick Wrenn's First Amended Complaint ("Amended Complaint") [Doc. No. 19]. Wrenn filed responses to these motions [Doc. Nos. 47, 50],[1] and Defendant Fortune replied [Doc. No. 41].

Upon consideration, and for the reasons stated below, the Court GRANTS the motions and DISMISSES Wrenn's claims against Fortune and Shoals.

## I.    BACKGROUND

Plaintiff Darrick Edward Wrenn ("Wrenn") brings this action alleging constitutional and state law claims arising from his 2016 arrest and subsequent

---

[1] Although Fortune disputes the propriety of Wrenn's response on her motion, the Court finds it in the interest of justice to consider Wrenn's response. *See* LCvR1.2(c) (explaining that the trial judge has discretion in a civil case to waive a requirement of the local rules "when the administration of justice requires"); *see also* LCvR7.1(g) (providing that the trial court may lengthen or shorten the time in which to respond to a motion).

prosecution for Medicaid fraud. [Doc. No. 19 ¶ 2]. This is Wrenn's fourth federal lawsuit on these claims.[2]

On June 20, 2016, the State of Oklahoma filed criminal charges against Wrenn, his wife Janice Cassandra Wrenn, and Defendant Kimberly Shoals. [Doc. No. 19 ¶ 31]. Wrenn was charged with one count of Medicaid Fraud and one count of Conspiracy to Commit Medicaid Fraud. *Id.* According to the Amended Complaint, Wrenn was arrested under a warrant based on an affidavit of probable cause that contained "material misrepresentations." *Id.* Wrenn alleges he "was arrested and prosecuted despite the lack of probable cause, due process, or supporting evidence." *Id.* On December 10, 2021, Wrenn was acquitted of all charges by jury verdict. *Id.* ¶ 69.

Wrenn asserts the following claims against Shoals: (1) False Arrest, *id.* ¶¶ 87–88; (2) False Imprisonment, *id.* ¶¶ 106–109; (3) Conspiracy to Deprive Civil Rights, *id.* ¶¶ 123–124; (4) Malicious Prosecution, *id.* ¶ 133; and (5) Intentional Infliction of Emotional Distress ("IIED"), *id.* ¶¶ 174–175.

Defendant Shoals was Wrenn's co-defendant in the underlying criminal action. *Id.* ¶ 26. The Amended Complaint alleges that Shoals "entered into a deferred prosecution agreement with MFCU Director Mykel Fry under false pretenses, after charges were filed on defendant." *Id.* ¶ 20. This arrangement was "used to intimidate" Wrenn. *Id.* ¶ 19.

---

[2] *See Wrenn v. Pruitt, et al.*, Case No. 21-cv-00060-JD (W.D. Okla.); *Wrenn v. Pruitt, et al.*, Case No. 22-cv-00647-G (W.D. Okla.); *Wrenn v. Okla. Off. of Att'y Gen., et al.*, 24-cv-00230-JD (W.D. Okla.).

Wrenn alleges Shoals lied to prosecutors by saying that Shoals and Wrenn had together conspired "to commit Medicaid fraud by allowing Darrick Wrenn and [E]xceptional [M]inds to bill under her business Options Unlimited," but that at trial Shoals denied "knowing Darrick Wrenn or committing any crimes with Darrick Wrenn." *Id.* ¶ 20. Wrenn further alleges that Shoals, along with others, "fabricated evidence and provided false testimony about Plaintiff's involvement with Exceptional Minds, falsely portraying the company as criminal." *Id.* ¶ 126.

Against Fortune, Wrenn asserts the following claims: (1) False Imprisonment, *id.* ¶¶ 106–109; (2) Malicious Prosecution, *id.* ¶ 133; and (3) IIED, *id.* ¶¶ 174–175. Wrenn does not specify whether his claim for "Retaliation in Violation of the False Claims Act . . . and the Whistleblower Protection Act" against "Other Defendants Acting Under Color of State or Federal Authority" is intended to cover Fortune. *Id.* ¶¶ 94–95.

Wrenn describes Fortune in combination with Defendant Mykel Fry, stating, "Deborah Fortune & Mykel Fry – Attorney and witness for the MFCU & [Attorney General]'s Office for the state Kimberly Shoals allegedly facilitated a coerced deferred prosecution agreement used to intimidate Darrick Wrenn." *Id.* ¶ 19; *see also id.* ¶ 25 (repeating paragraph 19 verbatim). Despite the scrivener's errors, context indicates that Wrenn alleges Fortune—who was Shoals's attorney[3]—conspired with Defendant Fry to "facilitate[] a coerced deferred prosecution agreement" for Shoals, and that this was

---

[3] The Court takes judicial notice of the publicly available state criminal case docket on the Oklahoma State Courts Network that Fortune represented Shoals, available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CF-2016-4884 (last accessed Mar. 12, 2026).

intended "to intimidate" Wrenn. *Id.* ¶¶ 19, 25. Wrenn does not otherwise identify any specific conduct by Fortune.

Wrenn's allegations establish that the conduct giving rise to his claims occurred between 2016 and 2021, culminating in his acquittal. *See id.* ¶¶ 42, 69. Wrenn alleges that Defendants "maliciously prosecut[ed] Plaintiff for six years despite knowing there was no valid case" and that "[t]he criminal case ended in Plaintiff's favor when he was acquitted on December 10, 2021." *Id.* ¶ 130. Wrenn states he "was wrongfully prosecuted for over six years, despite the lack of evidence." *Id.* ¶ 139. Wrenn further asserts that "[f]rom 2016 to 2021, the Defendants' false and unconstitutional actions prevented [him] from making meaningful progress" with his business ventures. *Id.* ¶ 57.

## II.    LEGAL STANDARDS

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court must "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678–79. "In

other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

Moreover, federal courts are courts of limited jurisdiction, meaning all claims filed in federal court must contain a statutory basis of jurisdiction. *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). Thus, "there is a presumption against [federal subject matter] jurisdiction." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). And the burden of proving subject matter jurisdiction lies with the plaintiff, as "it is settled that the jurisdiction of a court of the United States must appear from distinct allegations, or from facts clearly proven, and is not to be established argumentatively or by mere inference." *Thomas v. Bd. of Trs. of Ohio State Univ.*, 195 U.S. 207, 218 (1904).[4] "Mere conclusory allegations of jurisdiction are not enough" to establish subject matter jurisdiction. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).

Courts employ a liberal construction to the legal sufficiency of pro se pleadings, "applying a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997). This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Even so,

---

[4] Wrenn includes factual allegations in his responses that are absent from his Amended Complaint. In ruling on the motions to dismiss, the Court must consider only the "allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995). This means that the Court cannot consider the new factual allegations Wrenn lists in his responses to the motions to dismiss.

the court will not "assume the role of advocate," *id.*, nor will it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74.

### III.   ANALYSIS

Shoals and Fortune primarily contend that the Amended Complaint fails to satisfy the federal pleading standards of *Twombly* and *Iqbal*, arguing that the allegations rely on "labels and conclusions," often against "all Defendants." [Doc. No. 26 at 12; Doc. No. 30 at 3, 9]. Shoals and Fortune assert that they cannot be held liable under 42 U.S.C. § 1983 because they are private individuals rather than state actors functioning under the color of law. [Doc. No. 26 at 8, 20, 23; Doc. No. 30 at 2]. Both also point to the relevant statutes of limitation for each claim. [Doc. No. 26 at 10, 13, 22, 24–25, 27; Doc. No. 30 at 4–5, 7–9].

Wrenn argues Fortune did not merely represent Shoals but "actively collaborated with state officials" to coerce Shoals into the deferred prosecution agreement, which was then used to "intimidate and implicate" him. [Doc. No. 47 at 5–6]. He contends that Shoals also became a state actor because the deferred prosecution agreement was a "coordinated tool of state action." [Doc. No. 50 at 2]. While Wrenn declines to respond to all the statute of limitations arguments, he does contend that his claim for malicious prosecution accrued sometime following his acquittal in 2021. [Doc. No. 47 at 9].

Jurisdictional questions are usually addressed at the outset of a case "because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir.

2004); *see also* Fed. R. Civ. P. 12(h)(3). In this case, assessing the Court's jurisdiction over Wrenn's state law claims begins with whether the Court should dismiss Wrenn's federal claims. This is because the Court's decision of whether to exercise supplemental jurisdiction over Wrenn's state court claims depends in part on whether his federal claims survive. *See* 28 U.S.C. § 1367(c)(3) ("The district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). Because of this contingency, the Court first addresses Wrenn's alleged federal claims.

### A.      Wrenn fails to state a claim for retaliation.

Wrenn centers his retaliation claim on two federal statutes: the False Claims Act ("FCA") at 31 U.S.C. § 3730(h), and the Whistleblower Protection Act ("WPA") at 5 U.S.C. § 2302(b)(8). [Doc. No. 19 ¶ 94]. Wrenn states he "submitted a whistleblower complaint to the Office of Inspector General (OIG), alleging that the Oklahoma Health Care Authority (OHCA) and related parties engaged in Medicaid fraud." *Id.* ¶ 97. Wrenn takes issue with the fact that the Office of Inspector General "referred the matters back to OHCA—the very agency alleged to be involved in the misconduct" and he avers that this referral "violated [his] statutory rights under" the FCA and WPA. *Id.* ¶¶ 100–101.

Fortune argues that Wrenn lacks standing to bring a claim for retaliation under the WPA or FCA because neither statute affords him a private cause of action. [Doc. No. 26 at 15–19]. Wrenn responds by outlining the basic jurisdictional requirements of standing and arguing that he meets each element. [Doc. No. 47 at 14–16].

7

The WPA protects an employee of a government entity from adverse "personnel action" from his or her superiors in response to that employee's "disclosure of information" regarding violations of law, mismanagement of funds, and the like. 5 U.S.C. § 2302(b)(8). And the FCA both (1) restricts "[a]ctions by private persons" to claims "brought in the name of the Government," 31 U.S.C. § 3730(b); and (2) limits "[r]elief from retaliatory action" to "[a]ny employee, contractor, or agent," *id.* § 3730(h)(1).

Fortune is correct that Wrenn has no cause of action under either the WPA or the FCA: Wrenn has never suggested he has an employment, contract, or agency relationship with the government—nor could he plausibly do so. *See generally* [Doc. No. 19] (lacking any allegation that Wrenn has any such relationship with a government entity). But this just means Wrenn cannot state a claim, as the Supreme Court has rejected the idea of "statutory" or "prudential" standing being jurisdictional. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Taking the plain statutory language at face value, and accepting Wrenn's allegations as true, his allegations do not "come[] within the zone of interests" of the retaliation provisions of either the FCA or the WPA. *Id.* at 127 (citation modified). Wrenn has not stated a claim under these statutes.[5]

---

[5] This claim also fails to specify against whom it is brought, illustrating another defect. [Doc. No. 19 ¶ 95]. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (explaining that where the complaint "fails to isolate the allegedly unconstitutional acts of each defendant," it fails to present a plausible right to relief as "the burden rests on the plaintiff[] to provide fair notice of the grounds for the claims made against each of the defendants").

Moreover, to the extent Wrenn in his response tries to contend that his retaliation claim is based on violations of his constitutional rights [Doc. No. 47 at 16], any § 1983 claim on that basis would still fail for the reasons set forth below.

**B.    Wrenn's § 1983 claims fail because neither Fortune nor Shoals is plausibly a state actor.**

For Wrenn to state a well-pleaded claim under 42 U.S.C. § 1983, he "must allege the violation of a right secured by the Constitution and laws of the United States . . . by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Tests for state action come down to "whether the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (quoting *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 (10th Cir. 2016)). While courts have articulated different state action tests, Wrenn posits that the applicable test in this case is the "joint action" test. [Doc. No. 47 at 6; Doc. No. 50 at 2]. The Court agrees.

To establish state action under the "joint action" test, a plaintiff must show that the private defendant was a "willful participant in joint action with the State or its agents." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). This inquiry focuses on whether the state officials and private parties "acted in concert in effecting a particular deprivation of constitutional rights." *Id.* The Tenth Circuit has clarified that mere acquiescence by state

9

officials in the actions of a private party is insufficient; nor is it enough that the private and state actors shared a common benign goal. *Id.* at 1453, 1455.

### 1.   *Wrenn pleads no plausible facts showing Fortune is a state actor.*

Fortune argues the Amended Complaint contains so little regarding her actions that Wrenn fails to plead "'enough factual matter (taken as true) to suggest' that he is entitled to relief." [Doc. No. 26 at 21] (quoting *Twombly*, 550 U.S. at 556). Wrenn responds that Fortune's status as a private attorney offers no protection because she participated in "joint action" with the government to deprive him of his constitutional rights. [Doc. No. 47 at 6].

In *Barnard v. Young*, the Tenth Circuit rejected the idea that a private attorney's wrongful use of a subpoena duces tecum constituted action under color of state law. 720 F.2d 1188, 1189 (10th Cir. 1983). The panel agreed with "the vast weight of authority that private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983." *Id.* And because the plaintiff in *Barnard* did not argue "that state officers seized the documents or otherwise acted to enforce the subpoena," the "case d[id] not come under the 'joint participation' doctrine." *Id.* (citing *United States v. Price*, 383 U.S. 787 (1966); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)).

Wrenn does not allege facts sufficient to show that Fortune acted under color of state law, chiefly because Wrenn's Amended Complaint alleges almost nothing about Fortune generally. The sum of Wrenn's account of Fortune's actions consists of his

conclusory statement that Fortune "facilitated a coerced deferred prosecution agreement used to intimidate" him. [Doc. No. 19 ¶¶ 19, 25].

Without more, this is standard private legal conduct, not state action. As a private attorney negotiating a deferred prosecution agreement for her client, Fortune performed the traditional function of defense counsel. *See Barnard*, 720 F.2d at 1189. Wrenn does not allege that Fortune possessed any state authority, but rather that she "facilitated" an agreement with state prosecutors. Moreover, Wrenn fails to plead a "common, unconstitutional goal." *Gallagher*, 49 F.3d at 1454. While Wrenn characterizes the deferred prosecution agreement as "coerced" and "unlawful," the Amended Complaint suggests the *state* actors were the driving force, not Fortune. *See* [Doc. No. 19 ¶ 43] ("[Mykel] Fry orchestrated and executed an unlawful Deferred Prosecution Agreement . . . .").

Wrenn's false imprisonment allegations provide descriptions of specific actions taken by state defendants, but nothing about Fortune. *Id.* ¶¶ 112–120. Other than including her in the scope of his false imprisonment claim, Wrenn makes no effort to tell the Court what Fortune did to falsely imprison him. *Id.* ¶ 109. Wrenn fails to allege facts that, taken as true and seen in the light most favorable to him, *Peterson*, 594 F.3d at 727, plausibly show that Fortune acted under color of state law.

### 2.     *Wrenn pleads no plausible facts showing Shoals is a state actor.*

Shoals asserts that her role as a co-defendant with Wrenn contradicts any notion of her as a state actor. [Doc. No. 30 at 2]. To Wrenn's claim of false arrest, Shoals says Wrenn provides no description of how Shoals acted in concert with state officials to

restrict Wrenn's freedoms. *Id.* at 4. And Shoals points out that apart from listing her among the defendants in his false imprisonment claim, Wrenn declines to list any specific conduct attributable to Shoals. *Id.* at 5–6. Wrenn responds that Shoals is a state actor because she entered into a deferred prosecution agreement involving "joint action" with prosecutors. [Doc. No. 50 at 2].

Wrenn's Amended Complaint alleges that Shoals (1) "entered into a deferred prosecution agreement . . . under false pretenses"; (2) that she "acted in concert with" the state defendants to prepare a false affidavit; and (3) that she "conspired" with state defendants to "fabricate[] evidence and provide[] false testimony." [Doc. No. 19 ¶¶ 20, 26, 92, 126].

"[F]urnishing information to law enforcement officers, without more, does not constitute joint action under color of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016); *see also Benavidez v. Gunnell*, 722 F.2d 615, 616, 618 (10th Cir. 1983) (same). "Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *Schaffer*, 814 F.3d at 1157.

Even if Shoals provided false information to the state defendants, that does not probe whether law enforcement and prosecutors made an independent decision to prosecute Wrenn. *See Barnett*, 956 F.3d at 1235 (finding insufficient pleading to show a joint action conspiracy where the plaintiff alleged the defendants provided false information to law enforcement). Moreover, Wrenn does not allege that Shoals and the

state defendants "share[d] a common, unconstitutional goal." *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000)).

The rules from *Schaffer* make Wrenn's claim even less plausible in light of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. *Schaffer* explicitly distinguishes exertion of influence from provision of information—a criminal defendant cooperating with law enforcement lacks any influence of this sort. 814 F.3d at 1157. Wrenn has not alleged any specific characteristics of Shoals that would make her furnishment of information more "influential" than that of any other criminal defendant. Wrenn does not plausibly allege that Shoals acted under state law by cooperating with law enforcement and entering a deferred prosecution agreement.

### C. Wrenn fails to plead invidiously discriminatory racial animus in deprivation of a right guaranteed against private impairment.

Wrenn alleges a conspiracy under 42 U.S.C. § 1985(3) in which a broad coalition of Defendants—including Kimberly Shoals—acted in concert to deprive him of equal protection by fabricating evidence and providing false testimony to criminalize his business. [Doc. No. 19 ¶ 126]. Wrenn contends that this conspiracy was effectuated through a "sham hearing" conducted by the Oklahoma Health Care Authority, which allegedly disguised a panel hearing as a formal administrative proceeding and relied on a "biased" 70-page report rather than a proper audit. *Id.* ¶ 127. Furthermore, Wrenn asserts that the conspiracy was driven by pecuniary motives, alleging that the Defendants secured a fraudulent restitution award of approximately $154,600 by "conspir[ing] to discharge Shoals." *Id.* ¶ 129.

Shoals argues that Wrenn's argument cannot stand because he fails to plead racial or class-based animus. [Doc. No. 30 at 6]. Wrenn does not respond with any specificity to Shoals's arguments. Wrenn argues in general that Shoals's deferred prosecution agreement was a "coordinated tool" of "joint action," but Wrenn does not argue that his Amended Complaint pleads racial or class-based animus. [Doc. No. 50 at 2].

Shoals is correct: to state a claim for conspiracy to deprive constitutional rights, a plaintiff must allege that two or more persons conspired for the purpose of depriving, either directly or indirectly, a person of the equal protection of the laws. 42 U.S.C. § 1985(3). The Supreme Court in *Griffin v. Breckenridge* held that such a claim "requir[es] . . . some racial, or perhaps otherwise class-based, invidiously discriminatory animus." 403 U.S. 88, 102 (1971). Wrenn does not plead this requisite "racial . . . class-based, invidiously discriminatory animus," *id.*, nor does Wrenn argue that he does, *see generally* [Doc. No. 50] (containing no argument that Wrenn has pleaded the essential elements of a claim under 42 U.S.C. § 1985(3)). Wrenn's claim lacks "facial plausibility" because it lacks the needed "factual content that allows the court to draw the reasonable inference" that Shoals and others conspired with discriminatory animus. *Iqbal*, 556 U.S. at 678.

### D. Exercising supplemental jurisdiction, the Court concludes Wrenn's state law claims are time-barred.

For jurisdiction, Wrenn's Amended Complaint invokes 28 U.S.C. § 1331 and § 1343, covering his federal claims under 42 U.S.C. § 1983 and § 1985. [Doc. No. 19

¶ 3.1]. *See also* Fed. R. Civ. P. 8(a)(1) (explaining that a pleading "must contain a short and plain statement of the grounds for the court's jurisdiction").

But Wrenn's claims for malicious prosecution and IIED arise under state law. [Doc. No. 19 ¶¶ 133, 174].[6] Those claims must come under either diversity jurisdiction, 28 U.S.C. § 1332, or supplemental jurisdiction, 28 U.S.C. § 1367. Because courts exercise supplemental jurisdiction over claims *lacking* original jurisdiction, the Court must first ascertain whether Wrenn's state law claims fall within the Court's original jurisdiction before considering whether to exercise supplemental jurisdiction.

> ### 1.    *Wrenn fails to show diversity jurisdiction over the state law claims.*

To exercise diversity jurisdiction over state law claims, a plaintiff must adequately plead compliance with the complete diversity rule, which requires that every plaintiff be of differing state citizenship from every defendant. *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). An individual is a citizen of the state in which he is domiciled, and "[a]n individual's residence is not equivalent to his domicile." *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). Further, a plaintiff must also plead that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); Fed. R. Civ. P. 8(a)(1).

Here, Wrenn requests compensatory damages in the amount of $250,000,000. [Doc. No. 19 ¶ 230]. While Wrenn does not specify what portion of that injury is

---

[6] Wrenn's IIED claim does not specifically invoke state law, but there is no private tort for IIED under federal law.

attributable to the state law claims, the Court can liberally construe his requested compensatory relief as exceeding the statutory threshold.

But the Court cannot conclude that Wrenn has shown complete diversity. To start, Wrenn does not allege his own state citizenship. *See id.* ¶ 5 (stating Wrenn is "a citizen of the United States, and a resident of . . . Aurora, Colorado"). Wrenn refers only to "residence[s]," "address[es] for service," or location by job title for Defendants, not domicile or citizenship. *Id.* ¶¶ 6–18. Moreover, Wrenn says nothing at all about the residence, domicile, or citizenship of either Shoals or Fortune. *Id.* ¶¶ 19–20 (describing Shoals and Fortune for the first time, without reference to residence, citizenship, or domicile). Without the ability to assess diversity of citizenship, the Court cannot exercise diversity jurisdiction over Wrenn's state law claims against Fortune or Shoals.

> ### 2. *The Court exercises supplemental jurisdiction over Wrenn's state law claims.*

Although Wrenn fails to show diversity jurisdiction, the Court chooses to exercise supplemental jurisdiction over his state law claims. The Supreme Court in *United Mine Workers of America v. Gibbs* held that federal district courts have jurisdiction over claims facially outside their original jurisdiction if those claims are so closely related to other claims *within* federal jurisdiction such that together they comprise "but one constitutional 'case.'" 383 U.S. 715, 725 (1966) (quoting U.S. Const. art. III, § 2, cl. 1). Congress later codified the doctrine at 28 U.S.C. § 1367, conferring federal jurisdiction over "claims that are so related to [other] claims . . . [that are] within . . . [the court's] original jurisdiction that they form part of the same case or controversy." *Id.* § 1367(a). And

although "the district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction," it is not required to do so. *Id.* § 1367(c)(3).[7]

All Wrenn's claims arise out of the criminal charges brought against him by the State Defendants. Wrenn's allegations that Shoals and Fortune took part in those wrongful actions plainly create the "common nucleus of operative fact" mandated by *Gibbs* and reflected in § 1367(a). 383 U.S. at 725. The Court concludes it has supplemental jurisdiction over Wrenn's state law claims. *See Clemmons v. Wells Fargo Bank, N.A.*, 680 F. App'x 754, 757 n.1 (10th Cir. 2017) (unpublished) (noting that "the district court would have had supplemental jurisdiction over the state-law claims" where the plaintiffs' "state-law claims arise out of the same nucleus of operative facts"). Having cleared the jurisdictional hurdle, Wrenn's state law claims must now clear the relevant statutes of limitation—and those prove a more challenging leap.

### 3.      *Wrenn's state law claims are time-barred.*

Wrenn's complaint centers his state law claims for malicious prosecution and IIED around his criminal prosecution, which terminated with Wrenn's acquittal on December 10, 2021. [Doc. No. 19 ¶¶ 69, 130]. The Amended Complaint makes no reference to any

---

[7] The Court may decline to exercise supplemental jurisdiction over a state claim for other reasons, but the other subparagraphs do not support declination here. *See id.* § 1367(c)(1), (2), (4). Moreover, the Court views it as appropriate to retain Wrenn's state law claims "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" and in service of these interests. *See Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) (explaining that the district court "should consider retaining state claims when [these interests] would be served by retaining jurisdiction") (citation omitted).

events occurring after December 10, 2021, apart from his allegations relating to his federal retaliation claim. *See generally id.* (lacking any dates after 2021 apart from facts undergirding Wrenn's retaliation claim).

The statute of limitations is an affirmative defense, and a "plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). "But '[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when *the dates given in the complaint* make clear that the right sued upon has been extinguished.'" *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (alteration in original) (emphasis added) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)).

### a)  Malicious Prosecution

Defendants Fortune and Shoals argue that Wrenn's state law malicious prosecution claim is barred by the one-year statute of limitations set forth in 12 Okla. Stat. § 95(A)(4). [Doc. No. 26 at 24–25; Doc. No. 30 at 7–8]. Both point to December 10, 2021, as the appropriate date of claim accrual. *Id.* Wrenn offers no response to Shoals. *See generally* [Doc. No. 50] (lacking any statute of limitations arguments as to the malicious prosecution claim). And to Fortune, Wrenn cites several Oklahoma cases in support of the notion that his malicious prosecution claim accrued in 2023, some two years after his 2021 acquittal. [Doc. No. 47 at 9].

Wrenn's cases contradict his position. Wrenn cites *Greenberg v. Wolfberg*, 1994 OK 147, ¶ 21, 890 P.2d 895, 904, to argue that a malicious prosecution claim does not

accrue until all "qualified componential predicate[s]" have been terminated. *Id.* (quoting *Greenberg*, 1994 OK 147, ¶ 21, 890 P.2d at 904). In fact, *Greenberg* says that "the one-year time bar is set in motion by *each* qualified componential predicate terminated in favor of the malicious-prosecution plaintiff." *Greenberg*, 1994 OK 147, ¶ 21, 890 P.2d at 904 (emphasis added). That means Wrenn's December 10, 2021, acquittal triggered the limitations clock for the conduct underlying that specific prosecution.

Wrenn's other cases do not help him. *Heck v. Humphrey*, 512 U.S. 477 (1994), addressed when plaintiffs with existing convictions may sue—that is inapplicable here where Wrenn was acquitted. [Doc. No. 47 at 9]. And Wrenn cites *Gouskos v. Griffith*, 122 F. App'x 965 (10th Cir. 2005) (unpublished), but that case did not implicate a statute of limitations or a claim accrual question. *Id.*

Moreover, Wrenn's arguments do not square with his complaint. Wrenn argues his prosecution was not "favorably terminated" until 2023. *Id.* But his Amended Complaint unambiguously declares that "[o]n December 10, 2021, Plaintiff was fully acquitted of all criminal charges filed against him" and that "[t]he criminal case ended in Plaintiff's favor when he was acquitted on December 10, 2021." [Doc. No. 19 ¶¶ 69, 130]. The limitations clock for the "qualified componential predicate" that terminated on December 10, 2021, started that same day. Nowhere in the Amended Complaint does Wrenn allege any "remaining convictions," a plea that was later "vacated," a "judicial finding[] of prosecutorial misconduct," or a post-acquittal proceeding that terminated in 2023. *Compare* [Doc. No. 47 at 9], *with* [Doc. No. 19] (lacking any such allegations). A vague

19

and conclusory factual allegation asserted for the first time in a response brief cannot rescue Wrenn's claim.

Wrenn's claim for malicious prosecution accrued with his acquittal on December 10, 2021. The one-year statute of limitations expired on December 10, 2022. Even assuming for the sake of argument the maximum benefit of Oklahoma's one-year savings statute, 12 Okla. Stat. § 100, the latest possible expiration date would be December 10, 2023. [8] Wrenn filed his original complaint in this case on February 24, 2025. *See* [Doc. No. 1] (docket text showing filing date of February 24, 2025). Wrenn's malicious prosecution claim is barred by the statute of limitations. 12 Okla. Stat. § 95(A)(4).

### b)  *Intentional Infliction of Emotional Distress*

Fortune argues Wrenn's IIED claim is time barred, and that the Amended Complaint fails to include any specific account of Fortune's actions on IIED apart from generically including her in the claim. [Doc. No. 26 at 10, 25, 27]. Shoals raises the same arguments on the statute of limitations and failure to allege any specific actions. [Doc. No. 30 at 9]. Wrenn offers no response to either Shoals or Fortune regarding the statute of limitations, nor does he argue that he has adequately alleged extreme and outrageous conduct. Wrenn's response to Shoals contains no arguments at all on IIED. *See generally* [Doc. No. 50] (lacking any response arguments regarding IIED). To the extent Wrenn defends the IIED claim against Shoals at all, he does so implicitly by attacking Shoals's general argument that the Amended Complaint is "vague or conclusory." *Id.* at 7. Wrenn

---

[8] Wrenn did not name Fortune or Shoals in his prior federal lawsuits. *See supra* n.2.

makes a response to Fortune arguing that his group pleading strategy does not make his

Amended Complaint insufficient on IIED. [Doc. No. 47 at 17].

The two-year statute of limitations found in 12 Okla. Stat. § 95(A)(3) governs

actions for IIED. *See Williams v. Lee Way Motor Freight, Inc.*, 1984 OK 64, ¶ 7, 688 P.2d

1294, 1297 (confirming that this two-year statutory limitations period applies to actions

for IIED). That means the latest date of accrual for Wrenn's IIED claim would be

December 10, 2023, more than a year prior to Wrenn's filing date of February 24, 2025.

*See* [Doc. No. 1] (docket text showing filing date of February 24, 2025). Wrenn's IIED

claim against Fortune and Shoals is time-barred.[9]

### E.      Dismissal with prejudice is appropriate.

Federal Rule of Civil Procedure 41(b) states that "any dismissal . . . except one for

lack of jurisdiction, improper venue, or failure to join a party . . . operates as an

adjudication on the merits." And "[d]ismissals for failure to state a claim are

presumptively with prejudice because they fully dispose of the case." *Stan Lee Media,*

*Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014). Yet such dismissal with

prejudice requires that "granting leave to amend would be futile." *Seale v. Peacock*, 32

F.4th 1011, 1027 (10th Cir. 2022) (quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d

1180, 1190 (10th Cir. 2014)).

---

[9] Because the Court dismisses Wrenn's state law claims based on the statutes of limitations, the Court need not reach Fortune's arguments that she is protected by litigation privilege.

While pro se litigants are often afforded dismissal with leave to amend, the Tenth Circuit has stated this is appropriate when the "'factual allegations are close to stating a claim'" and not when claims "are barred by . . . the statute of limitations so that amending those claims would be futile." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Stated differently, the Court may dismiss a pro se litigant's claims with prejudice "when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [him] an opportunity to amend [his] complaint would be futile." *Knight*, 749 F.3d at 1190 (citation omitted); *see also McKinney v. Okla. Dep't of Hum. Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (recognizing same).

### 1.    *Wrenn cannot plead state action from Shoals.*

The structure of Wrenn's Amended Complaint makes further amendment futile on his § 1983 claims against Shoals. The Amended Complaint contains two instances of the following sentence: "Deborah Fortune & Mykel Fry—Attorney and witness for the MFCU & A.G.'S Office for the state Kimberly Shoals allegedly facilitated a coerced deferred prosecution agreement used to intimidate Darrick Wrenn." [Doc. No. 19 ¶¶ 19, 25]. Wrenn's grammatical errors muddy the waters, but the allegation clearly characterizes the deferred prosecution agreement as "coerced." *Id.* And in his response briefing, Wrenn confirms that this coercion flowed *from* Fortune *to* Shoals. [Doc. No. 47 at 5–6]. Shoals cannot at once be the hapless target of coercion and also an influence of such strength that the state defendants' choice to prosecute lacked independence. *See*

22

*Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016). This creates an incurable defect in Wrenn's false arrest and false imprisonment claims against Shoals.

### 2.    *Wrenn cannot state a false imprisonment claim against Fortune.*

Wrenn's false imprisonment claim against Fortune is legally insufficient for the simple reason that Wrenn's account of events centers on his prosecution under legal process. [Doc. No. 19 ¶ 21]. The Tenth Circuit distinguishes § 1983 claims for false imprisonment from claims for malicious prosecution on this factor: "Unreasonable seizures imposed without legal process precipitate Fourth Amendment false imprisonment claims. Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims." *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (citation modified). No amendment to Wrenn's pleadings could transform the nature of his prosecution from one with legal process to one without. And although Wrenn is entitled to a liberal construction, the Court cannot "construct a legal theory on [Wrenn's] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

### 3.    *Wrenn cannot plead a conspiracy to deprive constitutional rights.*

Amendment would likewise be futile as to Wrenn's claim against Shoals under 42 U.S.C. § 1985(3). Wrenn's Amended Complaint contains no allegation of "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Nor does Wrenn argue in response that his Amended Complaint pleads such animus, or that he could do so. *See generally* [Doc. No. 50] (containing no reference at all to § 1985(3)). Absent argument to the contrary, it is

23

"patently obvious," *Knight*, 749 F.3d at 1190 (citation omitted), that Wrenn cannot amend to state a claim under § 1985(3).

       **4.**      ***Wrenn cannot amend to show a different accrual date for his state law claims.***

Wrenn's account of the conduct creating his IIED and malicious prosecution claims ceases, at the latest, on his date of acquittal, December 10, 2021. [Doc. No. 19 ¶ 39] ("These actions in 2013 until 2021 caused severe damage to Darrick Wrenn resulting in his financial and mental anguish and physical losses . . . ."). The "right" that Wrenn "sued upon has been extinguished." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022).

       **5.**      ***Wrenn cannot amend to state a plausible claim for retaliation.***

Amendment would also be futile as to Wrenn's retaliation claim. As discussed, the FCA limits retaliation relief to an "employee, contractor, or agent," 31 U.S.C. § 3730(h)(1), and the WPA protects government employees from adverse "personnel action" by their superiors, 5 U.S.C. § 2302(b)(8). Wrenn has never alleged any employment, contractual, or agency relationship with the government—much less with Fortune or Shoals, who are private individuals. *See generally* [Doc. No. 19]. It is therefore "patently obvious" that granting leave to amend this claim would be futile. *Knight*, 749 F.3d at 1190.

       **6.**      ***Wrenn's federal claims are further barred by the statute of limitations.***

"[F]ederal law looks to the law of the State in which the cause of action arose . . . . for personal-injury torts" to provide a statute of limitations. *Wallace v. Kato*,

549 U.S. 384, 387 (2007). For § 1983 and § 1985 claims, the appropriate local time limitation is Oklahoma's "two-year limitation for 'an action for injury to the rights of another.'" *Meade v. Grubbs*, 841 F.2d 1512, 1523 (10th Cir. 1988) (quoting 12 Okla. Stat. § 95(A)(3)), *abrogated in part on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). Wrenn's Amended Complaint pleads no facts relating to actions taken by the defendants after Wrenn's December 10, 2021, acquittal. [Doc. No. 19 ¶ 130].

## IV.    CONCLUSION

The Court GRANTS Defendant Deborah Fortune's Motion to Dismiss Amended Complaint [Doc. No. 26] and Defendant Kimberly Shanique Shoals's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 30].  Wrenn's claims against Defendants Fortune and Shoals are DISMISSED WITH PREJUDICE. Defendant Fortune's Motion to Strike Plaintiff's Opposition to Fortune's Motion to Dismiss [Doc. No. 53] is DENIED AS MOOT.

This action currently continues as to the other parties and claims. The Court is in the process of analyzing the other pending motions and parties that remain in this action. The parties shall refrain from unnecessary additional filings until the Court issues orders on the other pending motions.

IT IS SO ORDERED this 13th day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

25